# UNITED STATES v. GRIZZARD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF KENTUCKY.

No. 66.  Argued December 6, 1910.—Decided January 3, 1911.

The compensation to be awarded under the Fifth Amendment for an
actual physical taking of a part of a distinct tract of land includes
not only the market value of the part appropriated, but the damage
to the remainder resulting from such taking, embracing injury due
to the use to which the part appropriated is to be devoted.
In this case *held* that such damage to the unappropriated portion of the
tract included that caused by cutting off access therefrom to the
public road by flooding the land actually taken.
In determining the total amount of damages for land appropriated and
for damages to remainder, the trial court may divide the total
award and specify the amounts for each element of damage, and it is
not error if the total award represents the difference between the
value of the entire tract before the taking and that of the remainder
after the taking.  A less sum would not be the just compensation
which the Fifth Amendment prescribes.

THE facts are stated in the opinion.

*Mr. Assistant Attorney General John Q. Thompson,* with
whom *Mr. Assistant Attorney Cox* was on the brief, for
the United States:

The closing of public highways, such as streets, road-
ways and alleys, when done under and pursuant to au-
thority conferred by a valid act, and where there has been
no want of reasonable care or skill in the execution of
the power, does not constitute a taking of private prop-
erty within the meaning of the Constitution.  This is
especially true where ingress and egress to and from land
has been closed in but one direction.  At most, the dam-
ages arising therefrom have been held to be consequen-

tial and not actionable.   *United States* v.· *Welch,* 217 U. ·S. 333, does not apply.   See Lewis on Eminent Domain (3d ed.), § 202; *Keasy* v. *Louisville,* 4 Dana, 154; *Louisville & Frankfort R.· R. Co.* v. *Brown,* 17 B. Mon. (Ky.) 763; *Wolfe* v. *C. L. R. R. Co.,* 15 B. Mon. (Ky.) 404; Cooley, Const. Lim. (6th ed.), pp. 473, 666; Dillon, Mun. Corps., § 987; Sedgwick, Stat. Const. (2d ed.), pp. 456 *et seq.*

Defendants in error must show something more than damage to bring suit within the jurisdiction of the court under the act of March 3, 1887.   They cannot be content with alleging and proving mere damages arising out of the commission of a tort, but must show that there has been such a taking of private property for public use as is inhibited by the Fifth Amendment to the Constitution. Neither can they, by any evasion in pleading, create an action *ex contractu* out of one purely sounding in tort. 149 U. S. 593; 188 U. S. 400.

It has not been alleged, nor can it be presumed as a matter of law, that defendants possessed any individual property right in a public road of Madison County.   Whatever rights that county and the State of Kentucky may have in this thoroughfare need not here be discussed,·because they are not parties to this proceeding.

There was no appearance or brief filed for defendant in error.

MR. JUSTICE LURTON delivered the opinion of the court.

Action by the owners of a farm for a taking of a part thereof by the United States for public purposes.   Judgment for the plaintiff below.

The farm of the defendants in error lies upon Tates Creek, a tributary of the Kentucky River.   ·For the purpose of improving the navigation of that stream the Gov-

ernment has erected a series of locks and dams. As a consequence the waters of Tates Creek are backed up to such an extent as to flood or submerge a strip of the Grizzard farm, permanently destroying its use for agricultural purposes. The court below, a jury being waived, found that seven and a half acres of land had been actually taken. He then added:

"3. That in addition there is taken an easement of access from plaintiffs' land by way of the county road to the Tates Creek pike.

"4: That the whole land was worth $3,000 before said taking, and what was left after the taking was worth $1,500.

"5. I divide the damage by reason of the taking between the land taken and the easement of access taken equally, i. e., I allow $750 for the land taken, and a like sum of $750 for the easement of access taken.

"I therefore conclude as a matter of law that plaintiffs are entitled to a judgment for $1,500."

The errors assigned relate only to so much of the judgment as allows damages for the "easement of access," referred to in the findings above set out. That there was a taking by flooding permanently the seven and a half acres, valued at $750 by the court below, is not contested. *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *United States* v. *Lynah*, 188 U. S. 445; *United States* v. *Welch*, 217 U. S. 333; *High Bridge Lumber Co.* v. *United States*, 69 Fed. Rep. 323.

The contention is that the "easement of access" destroyed, and therefore, taken, was not a private right of way constituting property such as that for which compensation was allowed in *United States* v. *Welch*, but was a public county road; and reference has been made to the well-known class of cases touching an injury to land not taken by the construction of a railroad along and upon an abutting public road, or a change of grade to the dam-

age of adjacent property, and like indirect injuries to the use of property adjacent but of which no part was taken from the owner. *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Sharp* v. *United States,* 191 U. S. 341.

But here there has been an actual taking by permanently flooding of a part of the farm of the defendants in error. An incident of that flooding is that a public road running across the flooded land is also flooded. But if this were not so, and the roadway had simply been cut off by the interposition of the flooded portion of the farm, the damage would be the same. Since, therefore, there has been a taking of a part of the owners' single tract and damage has resulted to the owners' remaining interest by reason of the relation between the taken part and that untaken, or by reason of the use of the taken land, the rule applied in the cases cited does not control this case.

That the petition laid stress upon the flooding of the highway which crossed the flooded land, and sought to recover for a deterioration of an easement in the public road, is not fatal. The damage to the land not appropriated is the obvious consequence of the taking of a part of the whole by flooding—a manner of appropriating which has made the village market, church and school so inconvenient of access as to add some three miles of travel by an unimproved and roundabout country road. Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted. Thus in *Sharp* v. *United States,* 191 U. S. 341, 353, damage resulting to adjacent but distinct parcels was denied because there had been no actual appropriation of any part of such separate parcel, but the principle was conceded as to injury, from the character of the

use of that taken, to that untaken of the same tract. Upon this distinction the court said:

"Upon the facts which we have detailed we think the plaintiff in error was not entitled to recover damages to the land not taken because of the probable use to which the Government would put the land it proposed to take. If the remaining land had been part of the same tract which the Government seeks to condemn, then the damage to the remaining portion of the tract taken, arising from the probable use thereof by the Government, would be a proper subject of award in these condemnation proceedings. But the Government takes the whole of one tract."

To the same effect see Cooley's Constitutional Limitations, pp. 565–566.

There is nothing in *United States* v. *Welch*, 217 U. S. 333, cited above, which conflicts with the conclusion we have reached, but, upon the contrary, the trend of the opinion is toward the decision we announce.

The constitutional limitation upon the power of eminent domain possessed by the United States is that "private property shall not be taken for public use without just compensation." The "just compensation" thus guaranteed obviously requires that the recompense to the owner for the loss caused to him by the taking of a part of a parcel, or single tract of land shall be measured by the loss resulting to him from the appropriation. If, as the court below found, the flooding and taking of a part of the plaintiffs' farm has depreciated the usefulness and value of the remainder the owner is not justly compensated by paying for only that actually appropriated, and leaving him uncompensated for the depreciation over benefits to that which remains. In recognition of this principle of justice it is required that regard be had to the effect of the appropriation of a part of a single parcel upon the remaining interest of the owner, by taking into ac-

count both the benefits which accrue and the deprecia-
tion which results to the remainder in its use and value.
Thus in *Bauman* v. *Ross,* 167 U. S. 548, 574, it is said:

"Consequently, when part only of a parcel of land is
taken for a highway, the value of that part is not the sole
measure of compensation or damages to be paid to the
owner; but the incidental injury or benefit to the part not
taken is also to be considered. When the part not taken
is left in such shape or condition as to be in itself of less
value than before, the owner is entitled to additional
damages on that account. When, on the other hand, the
part which he retains is specially and directly increased
in value by the public improvement, the damages to the
whole parcel by the appropriation of part of it are less-
ened."

In *Sharp* v. *United States,* 191 U. S. 341, 354, and *High
Bridge Lumber Co.* v. *United States,* 69 Fed. Rep. 320,
323, as well as in *United States* v. *Welch,* 217 U. S. 333,
the principle is recognized as settled law.

Both the petition and the finding show that access to
the public road has been cut off by the intervention of
flooded land actually taken.

That the trial judge found the damages for the land
and for the easement of access separately is not control-
ling. The determining factor was that the value of that
part of the Grizzard farm not taken was fifteen hundred
dollars, when the value of the entire place before the tak-
ing was three thousand dollars. A judgment for a less
sum will not be that "just compensation" to which the
defendants are entitled. The case is not different in le-
gal consequence from what it would have been if a rail-
way had been constructed across one's lawn, cutting the
owner off from his road and outbuildings, etc. To say
that such an owner would be compensated by paying
him only for the narrow strip actually appropriated, and
leaving out of consideration the depreciation to the re-

maining land by the manner in which the part was taken, and the use to which it was put, would be a travesty upon justice.

*Judgment affirmed.*