**WEST VIRGINIA PULP & PAPER CO. v. UNITED STATES.**

No. 6439.

United States Court of Appeals Fourth Circuit.

Argued Oct. 10, 1952.

Decided Nov. 10, 1952.

Charles W. Waring, Charleston, S. C. (Waring & Brockinton, Charleston, S. C., on brief), for appellant.

Ben Scott Whaley, U. S. Atty., Charleston, S. C. (James M. McInerney, Asst. Atty. Gen., James B. Heyward, Sp. Asst. to U. S. Atty., Charleston, S. C., Roger P. Marquis and S. Billingsley Hill, Attorneys, Department of Justice, Washington, D. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by a land owner from a judgment fixing compensation in a condemnation proceeding. The property involved is 44 acres of land belonging to the West Virginia Pulp & Paper Company which was taken to provide a site for storage of gasoline for the Air Force. It is a part of a 154 acre tract acquired by the company in 1936 and combined with adjacent tracts into one of approximately 413 acres, which was being held as a site for a pulp dissolving mill that the company was preparing to build near its plant on the Cooper River above Charleston, S. C. The jury fixed the value of the 44 acres condemned, together with all damages incident to the taking thereof, at $44,000; and, from judgment in accordance with the verdict, the company has appealed.

■ The 44 acres was taken, as stated, to provide storage for gasoline, and the company proposed to show that following its taking the government constructed thereon large storage tanks with a capacity of 80,000 barrels each and an over-all capacity of 23,500,000 gallons. It further proposed to show that the hazards incident to this use of the property taken greatly depreciated the value of the remainder of the tract for industrial purposes. The trial judge excluded this evidence and refused to instruct the jury that it might include this depreciation in its award of damages. In this we think there was error. It is well settled that "Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value

of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted". United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 163, 55 L.Ed. 165; Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; United States v. Dickinson, 4 Cir., 152 F.2d 865, affirmed 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789; Raleigh, etc., R. Co. v. Mecklenburg Mfg. Co., 169 N.C. 156, 85 S.E. 390, L.R.A. 1916A, 1090; 18 Am.Jur. pp. 905–909.

In Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 116, 48 L.Ed. 211, where an entire tract of land was taken, it was held that there might be no recovery on account of depreciation in the value of other lands of the owner resulting from the taking, but the court was at pains to distinguish that case from one where there was damage to the remainder of a tract from the use made of the part taken, and in the course of its opinion used the following language:

"The owner offered to prove the probable use the government would make of the land for military purposes for which it was taken; also, that the use of the land for such military purposes would damage and depreciate the remaining and adjoining land; also, that if the land to be taken was used by the government for military purposes it would endanger the adjoining land of the owner for a long distance and make the removal of his buildings necessary. These offers were rejected, and the court held that the jury should not take into account prospective damages to the remaining and adjoining land of the owner, arising from the future use of the land sought to be taken from him for military purposes * * *.

"The important question is as to the admissibility of evidence of damages to the remaining lands of the owner which would probably flow from any particular and probable use by the government of the land to be taken. It is said by the plaintiff in error that just compensation consists not only in an award of the value of the lands which

are taken, but also of any damage that may result to the portion of the tract which remains, on account of such taking and on account of the uses to which the land taken may, or probably will, be put, and he cites many cases to show the correctness of the rule which he asserts.

"Its correctness may be conceded, but what we have to decide is whether the facts in this case bring it within the rule itself. We must see, therefore, what those facts are in order to intelligently determine the applicability of the rule asserted by the plaintiff in error.

\* \* \* \* \* \*

"Upon the facts which we have detailed, we think the plaintiff in error was not entitled to recover damages to the land not taken because of the probable use to which the government would put the land it proposed to take. If the remaining land had been part of the same tract which the government seeks to condemn, then the damage to the remaining portion of the tract taken, arising from the probable use thereof by. the government, would be a proper subject of award in these condemnation proceedings. But the government takes the whole of one tract. If the evidence were such as to leave it a matter of some doubt whether the land owned by the plaintiff in error were one tract or separated into three separate and distinct tracts, it would be proper to leave that question to the jury, with the instruction that if they found that it was one tract, then damages might be awarded, and refused if they were separate and independent tracts."

 The case here is to be distinguished from such cases as Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328, and Richards v. Washington Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088, which hold that there can be no award of compensation on account of use of lands taken from others. In this case, however, the claim for damages arises not from the use of land acquired from others but from damage done to the remainder of a unitary holding from the use made of the part thereof that has been taken. A part of the land acquired and held by the company as a site for plant expansion was taken for use by the government as a place for storing large quantities of highly inflammable and explosive gasoline; and the company was damaged not merely by the loss of the land taken but also by the depreciation that resulted in the value of the remainder of the land by reason of the proposed use. It was entitled to be awarded such sum as would put it in as good position pecuniarily as it would have been in if its property had not been taken. Campbell v. United States, supra. A land owner, a part of whose land is taken for the storage of large quantities of gasoline, is certainly not placed in such position unless he receives compensation for the damage done to the remainder of the land left on his hands as well as the value of the part taken. Cf. Oregon Mesabi Corp. v. C. D. Johnson Lumber Co., 9 Cir., 166 F.2d 997; South Bound R. Co. v. Burton, 67 S.C. 515, 46 S.E. 340; Raleigh, etc., R. Co. v. Mecklenburg Mfg. Co., 169 N.C. 156, 85 S.E. 390, L.R.A.1916A, 1090.

 The company complains, also, because the trial judge excluded evidence tending to show that the company had acquired the tract of land part of which was taken, together with adjacent lands, the whole comprising a total of approximately 413 acres, as a site for plant expansion and that the whole was needed for the construction of a pulp dissolving plant the construction of which had been authorized by the company and was being delayed only because of difficulty in securing necessary materials. We think that this testimony was admissible for the purpose of showing that the contiguous tracts of land acquired by the company had been acquired for the purpose named and had been integrated for that purpose into a single tract so that depreciation in the value of the entire tract could be considered by the jury in making its award. United States ex rel. Tennessee

Valley Authority v. Powelson, 4 Cir., 118 F.2d 79, 86, reversed on other grounds 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; Id., 4 Cir., 138 F.2d 343.

The rule is that, even where lands are contiguous, the owner is not ordinarily entitled to damages accruing to tracts which are separate and distinct from the lands taken. "If, however, several contiguous lots or tracts in reality constitute an entire parcel used for one general purpose by the common owner, the inquiry should embrace all injuries which will be caused to the entire body of land." 20 C.J. 735, 736; 29 C.J.S. Eminent Domain, § 140, page 981; 18 Am.Jur. 910; note 6 A.L.R.2d 1197, 1230. The rule applicable in such cases was well stated by Judge Gray, speaking for the Court of Appeals of the Third Circuit in Sharpe v. United States, 112 F. 893, 896, 57 L.R.A. 932, affirmed 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211: "It is not denied that in rendering the 'just compensation' secured by the constitution of the United States to the citizen whose property is taken for public uses it is right and proper to include the damages in the shape of deterioration in value which will result to the residue of the tract from the occupation of the part so taken. In applying this rule, however, regard is had to the integrity of the tract as a *unitary holding by the owner*. The holding from which a part is taken for public uses must be of such a character as that its integrity as an individual tract shall have been destroyed by the taking. Depreciation in the value of the residue of such a tract may properly be considered as allowable damages in adjusting the compensation to be given to the owner for the land taken. It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between a residue of a tract whose integrity is destroyed by the taking and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for property taken for public uses. How it is applied must largely depend upon the facts of the particular case *and the sound discretion of the court.*" (Italics supplied.) See, also, Potts v. Pennsylvania, etc., R. Co., 119 Pa. 278, 13 A. 291, 4 Am.St.Rep. 646; note 85 Am.St.Rep. at page 300.

This evidence was not admissible however, for the purpose of showing special damage sustained by the company as the result of the frustration of its plans for development; and if the evidence is admitted in the further trial of the case, this should be made clear by proper instructions. The measure of damages which the company is entitled to recover is the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken, not any special damage it may have suffered through frustration of its plans. United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 282–283, 63 S.Ct. 1047, 87 L.Ed. 1390; Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644; Omnia Commercial Co. v. United States, 261 U.S. 502, 513, 43 S. Ct. 437, 67 L.Ed. 773; United States v. Honolulu Plantation Co., 9 Cir., 122 F. 581, 585. For this reason the evidence offered as to expenditures that the company would have to make, such as building up marsh lands, to utilize the remainder of the land for the proposed development was properly excluded. Of course, expert witnesses testifying as to the value of the land before and after the taking could take into consideration the availability of the property for the highest and most profitable use for which it was adaptable, and to give as grounds of their opinions its adaptability for such a plant as the company was preparing to build and the expenditures that would be necessary to utilize the remainder for such a purpose. See United States v. 25.406 Acres of Land, 4 Cir., 172 F.2d 990.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded for a new trial.

Reversed.